

**SO ORDERED.**

**SIGNED this 27 day of June, 2006.**

_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: | ) |
| | ) |
| BRENT SPENCER, | ) Case No. 05-18421 |
| CHERYL SPENCER, | ) Chapter 7 |
| | ) |
| Debtors. | ) |

### MEMORANDUM OPINION

J. Michael Morris, trustee of the bankruptcy estate of Brent and Cheryl Spencer, seeks an order requiring the debtors to turnover certain funds he alleges remained in their bank accounts on the date of their bankruptcy petition. The debtors raise the familiar objection that they had written checks or otherwise committed these funds prior to filing their case and, moreover, that they are under no duty to turnover the funds to the trustee when he retains the power to recover the funds from their various payees. After conducting a brief evidentiary hearing on May 17, 2006 and reviewing authority submitted by the parties, the Court is ready to rule.

1

Jurisdiction

This turnover motion is a core proceeding over which the Court has subject matter jurisdiction.[1]

Factual Background

Debtors filed their chapter 7 petition on October 13, 2005. They proceed pro se. The Trustee's exhibits, admitted by stipulation, demonstrate that on the petition date, the debtors had four bank accounts, two at the Home Bank & Trust and two at Intrust Bank. The debtors' balances at those banks were as follows:

| | |
|---|---:|
| Home Bank Checking | $2,402.69 |
| Home Bank Savings | $5.26 |
| Intrust Checking | $2,562.12 |
| Intrust Savings | <u>$1,365.28</u> |
| Total | $6,335.35 |

On Schedule B, the debtors reported their ownership of three accounts at these two banks, but neither specified the address of the banks nor supplied any account numbers. Debtors scheduled the accounts as having a combined value of $3,300, and on Schedule C, claimed these accounts as exempt under KAN. STAT. ANN. § 60-2304(a) (2005), also valuing the exemption at $3,300.[2]

At trial, Brent Spencer testified that he wrote various checks on the checking accounts for a variety of living expenses. While the bank statements admitted in evidence show the withdrawals

---

[1] *See* 28 U.S.C. § 157(b)(1) and (2)(E) and § 1334(b).

[2] KAN. STAT. ANN. § 60-2304(a) is the Kansas exemption for "household goods." It is clearly inapplicable to the funds in bank accounts but the trustee did not object to the claimed exemption. The trustee concedes that debtors are entitled to the exemption in the amount claimed. *See Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992).

2

being made, there was little evidence presented about who the payees were. The Home Bank statement reflects payments to grocery stores and a credit card company, along with several ATM withdrawals. The Intrust statements show several preauthorized payments to creditors, but do not in every case disclose the identities of the payees. Spencer's testimony did not include any specifics about how the money in these accounts was spent.

Analysis

The trustee has the burden to prove that the property sought is in fact property of the bankruptcy estate and that the debtor was in possession, custody or control of the property sought.[3] 11 U.S.C. § 542(a)[4] requires an entity having such possession, custody or control to deliver the property to the trustee for the benefit of the creditors. Section 521(4) requires debtors to surrender any property of the estate to the trustee.

Debtors contend that, with the writing of their checks pre-petition, the money left their accounts, was no longer in their possession or control at the petition date, and is therefore no longer property of the estate. The Court disagrees. All legal and equitable interests of the debtor in property as of the date of the bankruptcy petition are property of the debtor's bankruptcy estate under § 541(a)(1). The trustee argues here that, because the checks written by the Spencers before filing had not cleared at the petition date, the funds in the account on that date remained legal

---

[3] *In re Wagers,* 340 B.R. 391, 411 (Bankr. D. Kan. 2006) (prerequisite for trustee's recovery of tax refunds under turnover provision is that property sought is property of bankruptcy estate); *In re Himes*, 179 B.R. 279 (Bankr. E.D. Okla. 1995) (burden of proof in turnover proceeding is on trustee); *In re Muniz*, 320 B.R. 697, 699-700 (Bankr. D. Colo. 2005); *Blinder, Robinson & Co., Inc.*, 140 B.R. 790, 793 (D. Colo. 1992) .

[4] All subsequent statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* unless otherwise cited. Because this case was filed prior to October 17, 2005, the 1978 Code applies.

interests of the debtor. While the determination of whether a transfer has occurred for bankruptcy purposes is a matter of federal law, courts look to state law to determine the respective property interests in the transferred property.[5]

The appropriate state law here is Article 3 of the Uniform Commercial Code as adopted by Kansas. KAN. STAT. ANN. § 84-3-408 (1996) states that a check does not of itself operate as an assignment of funds in the hands of the drawee [bank] and that the drawee is not liable on the instrument until the drawee accepts it. The Kansas Comment to § 84-3-408 speaks to the situation here – where the bankruptcy trustee asserts the funds are property of the estate:

> Similarly, the drawer's trustee in bankruptcy may claim the account as an asset of the estate if the petition in bankruptcy is filed after the check was drawn but before final payment . . . As another variation on the bankruptcy theme, this section probably means that a "transfer" of funds in the account to the payee for voidable preference purposes occurs upon final payment by the drawee bank, not upon execution of the check.[6]

Indeed in the preference context, the Supreme Court has held that the date of a transfer of funds in a checking account is the date the checks are honored rather than the date they are delivered.[7] There is no logical reason why this same rule should not apply here in the context of turnover.[8] Thus, while the Spencers may have intended to expend the funds in their accounts prior to filing their case,

---

[5] *Butner v. United States*, 440 U.S. 48, 54-55 (1979) (" . . . Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

[6] KAN. STAT. ANN. § 84-3-408 (1996), Kansas Comment, 1996.

[7] *See Barnhill v. Johnson*, 503 U.S. 393, 401 (1992).

[8] *See In re Dybalski*, 316 B.R. 312, 316 (Bankr. S. D. Ind. 2004) ("Date of honor" rule applied to trustee's turnover motion; checks that debtor had written and that cleared between the petition date and trustee's turnover motion were property of the bankruptcy estate.) *See also, In re Mills*, 176 B.R. 924 (D. Kan. 1994) (date of transfer occurred when credit union honored debtor's check for purposes of avoidance of post-petition transfer under § 549).
4

the funds remained in their possession and control at the date of the petition, were property of the estate, and were therefore subject to turnover.

Had the trustee objected to the debtors' exemption of $3,300 of the funds, that objection would undoubtedly have been sustained. Debtors exempted the funds under KAN. STAT. ANN. § 60-2304(a) which is the exemption provided under Kansas law for household goods. As this Court has held before, there is no applicable Kansas exemption for funds in a bank account.[9] They are certainly not within the definition of household goods. However, the trustee's failure to object to the exemption renders the exemption enforceable even if legally invalid.[10] Even so, debtors' exemption here only extends to the amounts they have exempted, not the entire balance of the bank accounts.[11] At trial, the trustee conceded that he only sought to recover $3,035.35, the difference between the amount in the accounts at filing and the $3,300 amount exempted by the debtors.

Debtors argue that they should not be made to turnover funds they have already spent because the trustee has other means of recovering the money. He could, they argue, seek return of the funds from the various payees as being unauthorized post-petition transfers under § 549. They also assert that the trustee could have instructed the banks to desist paying the checks and that he is in fact required to do so "as soon as possible" under Fed. R. Bankr. P. 2015(a)(4).

At least two courts, one sitting in Kansas, have espoused this view. In *In re Figueira*, former Chief Judge Pusateri opined that the Code and Rules only require debtors to provide information

---

[9] *In re Resler*, 282 B.R. 246, 249 (Bankr. D. Kan. 2002).

[10] *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643 (1992). *See also* Fed. R. Bankr. P. 4003(b); 11 U.S.C. § 522(l).

[11] *See In re Semmel*, No. 01-14433, 2004 Lexis 2023 (Bankr. D. Kan. Dec. 16, 2004) and cases cited therein.

5

about the whereabouts of bank accounts and their contents to trustee, not to withdraw the funds and deliver them.[12] Because a bank account "was not actual cash held by the bank for the benefit of the debtors, but simply a debt the bank owed them," all the trustee received at filing was the right to seek payment of the funds from the bank, and not the funds themselves.[13] A bankruptcy court sitting in the Western District of Missouri has followed *Figueira's* lead. In *In re Taylor*, the court essentially held that the trustee's duty to give notice of his interest in the funds to the banks under Rule 2015(a)(4) burdens the trustee, not the debtor, with the responsibility to recover the funds from the payees using his § 549 powers.[14] Under this theory, the debtor would have no liability to the estate for the transfer of estate property resulting from the post-petition honoring of pre-petition checks, nor would the debtor have a duty to turn the property over.

A number of bankruptcy courts have rejected this view, however. Perhaps the most detailed treatment of this issue is found in *In re Sawyer*.[15] In *Sawyer*, the bankruptcy court faced a situation similar to this one, albeit without the exemption issue, and concluded that the debtors had the requisite control over the funds because their bank had not authorized final payment on the checks until after the petition date. Concluding that the funds were assets of the estate, the court concluded that the debtors are entities under § 542 and therefore obligated to turnover those funds. Disagreeing with *Figueira*, the *Sawyer* court stated that while it "has an enormous amount of sympathy for the pro se Debtors in this case who apparently acted in good faith, the Court cannot disregard those

---

[12] 163 B.R. 192 (Bankr. D. Kan. 1993).

[13] *Id.* at 194.

[14] 332 B.R. 609 (Bankr. W.D. Mo. 2005).

[15] 324 B.R. 115 (Bankr. D. Ariz. 2005). S*ee also In re Maurer*, 140 B.R. 744 (D. Minn. 1992).

6

provisions of federal and state law which provide . . . that the Debtors' interest in the . . . account became property of the bankruptcy estate when they filed their petition. . . ."[16]

Other courts addressing like turnover requests have held that a check is not a binding assignment of funds until the drawee accepts it and that, as a result, funds remaining on deposit to satisfy outstanding checks at the date a debtor files his bankruptcy are property of the estate.[17] These courts also apply § 521(4) to require the debtor to surrender the funds on hand at filing.[18] At least one of these courts also notes that, under § 550(a), the trustee may choose to recover transferred property not only from mediate or immediate transferees, but also from those for whose benefit the transfers were made.[19] In the present case, those transfers were made for benefit of the debtors.

This Court believes that the courts ordering turnover have the better view. Trustees facing this situation have several non-exclusive choices. They can give and rely upon the Fed. R. Bankr. P. 2015(a)(4) notification to the banks if they have sufficient information to do so. They can seek to recover the transferred funds from the payees of the checks by pursuing an avoidance action under § 549. Or, they can seek recovery of the funds from the debtor without an adversary proceeding by invoking either the debtor's duty to surrender under § 521(4) or his duty to turnover under § 542(a). It is ultimately the trustee's duty to collect the property of the estate "as expeditiously as is compatible with the best interests of the parties in interest."[20]

---

[16] *Sawyer,* 324 B.R. at 123.

[17] *In re Danowski*, 320 B.R. 886 (Bankr. N.D. Ohio, 2005) (Under Article 3, check not an assignment of funds in itself because drawee not liable until it accepts check for payment.).

[18] *See Dybalski*, 316 B.R. at 316.

[19] *Id.*

[20] 11 U.S.C. § 704(1).

In the present case (as in many, the Court suspects), the debtors did not identify which bank branches held their accounts or the applicable account numbers, making it difficult for the trustee to give the Rule 2015 notification. In addition, had the trustee made the notification, both banks would likely have frozen the accounts, exposing the debtors to the criminal and civil penalties that attend returned checks and thwarting their fresh start by rendering the debtors unable to use their accounts at all. Moreover, most of the checks written and honored post-petition were for a few hundred dollars each. Had the trustee chosen the § 549 route, he would be burdened with commencing a plethora of § 549 actions to recover two or three hundred dollars. This would be a poor economy to the estate, not to mention wasteful of the Court's time and resources. One could hardly consider it "expeditious" as § 704 requires.

While it is undoubtedly burdensome for the debtors to pay twice because the date of filing their petition intervenes between their issuance of checks and those checks being honored, it is well within the law and the trustee's sound discretion to decide to recover these payments from the debtors instead of the payees. The payments were made for the debtors' benefit with money that the debtors had an affirmative duty to deliver to the trustee under § 521(4) and § 542. Were this Court to follow *Taylor* and *Figueira*, it would be simple for debtors and aggressive creditors to game the system by writing checks immediately pre-petition to pay selected creditors while remaining secure in the knowledge that trustees would be unlikely to pursue very small § 549 actions. This in turn would result in an unfair distribution to those creditors the debtors chose not to pay pre-filing and defeat the Code's policy of promoting a fair distribution of the debtor's assets.

Collected funds in a debtor's bank account at the date of filing are property of the estate and, prior to outstanding checks being honored, debtors retain possession, custody, or control of these

8

assets. They are accordingly subject to turnover at the trustee's request. Debtors seeking to avoid the unpleasant result of multiple payments should be certain that any checks they write pre-petition have cleared before they file their case.

The trustee's motion for turnover is GRANTED and judgment is entered against the debtors in the amount of $3,035.35. Debtors are ordered to turnover the sum of $3,035.35 to the trustee forthwith.

# # #

9